[No. 2405.]

## JOHN GOFORTH *v.* THE STATE.

1. EXHIBITING GAMING TABLE.—FORMER ACQUITTAL of a co-defendant, jointly indicted with this defendant for exhibiting a gaming table, the two being indicted as individuals, can not operate as a bar to the subse quent prosecution of this defendant for the same offense, even though it were true that both parties indicted were partners. The trial court properly instructed the jury to disregard the special plea. It should have been excepted to and stricken out.

2. SAME—JURY LAW.—A jury in the county court is composed of six men, and is formed by drawing from the box the names of twelve jurors, "or so many as there may be," etc. In this case there were but six regular jurors, and the defendant was required to pass upon them before others were summoned and placed in the box. *Held*, correct; and that the court could not be required to have the panel filled to twelve unless there were twelve regular jurors, nor could it be required to fill the panel to twelve before passing on the six in the box. Moreover, if the formation of the jury was irregular, it is not made to appear that prejudice resulted to the appellant.

3. EVIDENCE.—BILL OF EXCEPTION failing to show the objections made to the evidence rejected, or even that it was rejected by the trial court, can not be considered on appeal.

4. SAME—CHARGE OF THE COURT.—See the statement of the case for special instructions which were correctly refused as being predicated upon no evidence in the case.

APPEAL from the County Court of Rusk. Tried below before the Hon. J. H. Turner, County Judge.

Appellant was convicted of exhibiting a gaming table, under an indictment which charged him jointly with one Jeff Wheelis. A fine of twenty-five dollars was the punishment assessed against him.

Ben Bradford was the first witness for the State. He testified that during the year 1884 the defendant and Jeff Wheelis did a saloon business in the town of Overton. They kept in their saloon a pool or billiard table, on which was played the game commonly known as "fifteen ball pool." The witness spent a part of the night from four to six nights in every week in 1884 in the defendant's saloon and played fifteen ball pool nearly every one of these nights. The game was usually played with

the understanding that the loser should pay for the drinks or cigars, at defendant's bar, for every person engaged in the game. The drinks or cigars taken on the game at defendant's bar were sold at twelve and a half cents each. When witness wanted neither a drink nor a cigar he took a chip, and had often seen others do the same thing; which chip was worth a drink or a cigar at the defendant's bar. The table was always accessible to the public. The witness had seen persons play on the table without taking drinks or chips, but the usual practice was for the loser of the game to pay at the bar for drinks or cigars for the players. Defendant had never charged table fees for playing on the table, so far as the witness knew. Witness did not know as a matter of fact that defendant was aware of the usual understanding as to the drinks and cigars, but he often heard defendant ask at the conclusion of a game: "Who got stuck this time?" Cigars and drinks sold over defendant's bar for twelve and a half cents each when not taken on the game. Witness had never heard defendant ask any one to take drinks or cigars on the game.

W. W. Hall and H. M. Mitchell, witnesses for the State, testified substantially as did the witness Bradford, and the State closed.

Sam A. Overton testified, for the defense, that he had played several games of fifteen ball pool on the defendant's table. He sometimes took a drink, sometimes a cigar, sometimes a chip, and sometimes nothing on the game. Defendant had never charged witness for playing on the table. Defendant also had a billiard table in his saloon, and witness did most of his playing on that. Witness had never heard the defendant request anybody to treat on the games of pool played on his table, but had heard him ask who got stuck on particular games, and had seen parties treat on the games.

T. J. Wheelis testified, for the defense, that he and the defendant, as partners, owned and operated a saloon in the town of Overton, in 1884. They kept a pool table in their saloon, on which customers and the public generally were at liberty to play fifteen ball pool. That table was accessible to the public throughout the year 1884.

The special charge refused by the trial court, and which is the subject matter of the fourth head note of this report, reads as follows:

"You are instructed in this case, that if the defendant kept

the table alleged to have been kept for gaming purposes, that is, if he allowed parties to play on the same, charged no fees, but required the players either tacitly or openly, to purchase drinks at the defendant's bar, or the loser to pay for the drinks for the players, at the defendant's bar, you will find the defendant guilty; but if the defendant simply kept the pool table and charged no fees, drinks or other thing of value on the same, and had no understanding with the players that the party losing should pay for drinks for the other players, and had charged no compensation for the use of said table, and no custom requiring the persons playing on the table to treat, but that the same was absolutely free to the world, without money and without price, you will find the defendant not guilty."

"Defendant asks the court to charge the jury that if they believe from the evidence that the table kept by defendant, which fact was admitted by him, was kept only for the amusement and recreation of his customers and patrons, and not for the purpose of gaming or of obtaining betters, and defendant received no table fees or any thing of value for the use of said table, and that defendant neither participated in nor encouraged said games, and had no interest in said games, and received no benefit from said games, you will, under the circumstances, find the defendant not guilty."

The motion for new trial raised the questions discussed in the opinion.

*W. C. Buford*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. I. Defendant's special plea of former acquittal presents no legal defense whatever in bar of this prosecution. That his co-defendant Wheelis, indicted jointly with him, had been tried and acquitted, could not operate as an acquittal of this defendant. Conceding that Wheelis and defendant were partners in keeping the gaming table, each was amenable individually and separately, and the acquittal or conviction of one would not bar the prosecution against the other. They were not indicted as a firm, but individually. The court did not err in instructing the jury to disregard said special plea. Said plea should have been excepted to, and should have been stricken out.

II.  There was no error in the organization of the jury.  A jury in the county court is composed of six men.  (Code Crim. Proc., Art. 595.)  It is formed by drawing from the box the names of twelve jurors, "*or so many as there may be,*" etc.  (Code Crim. Proc., Art. 646.)   In this instance there were but *six* regular jurors, and the defendant was required to pass upon these before others were summoned and put in the box.  This was correct practice.  It was not required of the court to have the panel filled to twelve, unless there were that many regular jurors, nor was it required that the panel should be filled to twelve before passing upon the six already in the box.  (Code Crim. Proc., Arts. 644, 647.)  Besides, if there was any irregularity in the formation of the jury, it is not made apparent that defendant was injured thereby.

III.  Defendant's bill of exceptions to the rejection of the testimony of Wheelis fails to show the objections made to said testimony, and does not even show that it was rejected by the court.  Such being the character of the bill, it can not be considered.

IV.  In view of the evidence, the charge of the court is sufficient and correct.  It is conclusively shown that the table was kept for gaming purposes, and there was no evidence warranting the special instructions requested by defendant.

We find no error in the conviction, and it is affirmed.

*Affirmed.*

Opinion delivered November 24, 1886.